## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

EANN C. BEATTY

     Plaintiff,                           CIVIL ACTION NO. 14-11550

     v.                           DISTRICT JUDGE ARTHUR J. TARNOW
                                      MAGISTRATE JUDGE CHARLES E. BINDER

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

**IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment should be **DENIED**, and that of Defendant **GRANTED**, as there is substantial evidence on the record that claimant regained the residual functional capacity to perform a significant number of jobs in the national economy after August 1, 2002.

### II.    REPORT

#### A.    Introduction and Procedural History

Plaintiff filed an application for Social Security Supplemental Security Income (SSI) benefits on October 14, 1993, alleging that he had become disabled and unable to work due

to mental retardation.  Benefits were granted by the Social Security Administration (SSA) in February 1994.

After a continuing disability review, the Commissioner determined that Plaintiff was no longer eligible for benefits as of August 1, 2002, because his mental retardation was no longer disabling. Plaintiff appealed this determination, which was affirmed by the SSA upon reconsideration. A requested de novo hearing was held on July 19, 2012[1], before Administrative Law Judge (ALJ) Michael F. Wilenkin. The ALJ found that claimant's retardation had medically improved.  He determined that the claimant had regained the residual functional capacity, after August 1, 2002, to perform a restricted range of work at all exertional levels.  The ALJ further determined that Plaintiff could return to work provided he was able to complete assigned tasks independently at his own pace, and that his work environment did not have sudden or abrupt changes. Claimant could not have frequent contact with supervisors, co-workers or the general public during the performance of his work duties.  Finally, the ALJ found that the claimant's history of marijuana use was not a contributing factor in the determination of disability (TR 301). The Appeals Council declined to review that decision, and Plaintiff commenced the instant action for judicial review of the denial of benefits.  The parties have filed Motions for Summary Judgment and the issue for

---

[1]An earlier administrative hearing was held before a different ALJ in June 2008 (TR 265-275), which resulted in a decision to terminate disability benefits as of August 2002, due to medical improvement (TR 14-26).  The United States District Court for the Eastern District of Michigan (Judge Sean Cox) remanded the action in September 2011, for additional administrative action in order to obtain medical opinion regarding the affect Plaintiff's continued marijuana use had on his retardation (TR 330-334).

review is whether Defendant's termination of benefits after August 1, 2002, was supported by substantial evidence on the record.

Plaintiff was 34 years old at the time of the administrative hearing in July 2012 (TR 113). Detroit Public School officials deemed claimant to be mentally impaired, and he attended special education classes before graduating from high school (TR 197, 266). Claimant had no past relevant work (TR 308). At the time of the remand hearing, he lived with his mother. Plaintiff helped her by performing such simple chores as snow shoveling and mopping the floor (TR 266, 268). He had attempted to wash his own clothing, but was unable to properly sort them in order to avoid improper bleaching (TR 268-269). Claimant allegedly had a difficult time concentrating, and he often had temper tantrums (TR 269).

A Vocational Expert, Pauline Pegram, testified that if the claimant were physically capable of performing work at all exertional levels, there were a significant number of jobs in the national economy after August 2002, that he could perform with minimal vocational adjustment (TR 404-406). The jobs required the performance of simple and routine work duties, which could be learned by demonstration rather than following verbal instructions. Productivity would not be dictated by an external source over which a worker had no control. The VE added that these jobs could be performed independently with minimal contact with supervisors, co-workers or the general public (TR 402-404).

## B. Standard of Review

To determine whether a beneficiary's disability continues, the Commissioner considers: (1) whether there has been medical improvement in the individual's condition

related to his ability to work; and (2) whether the individual can perform substantial gainful activity. 42 U.S.C. §§423(f)(1), 1614(a)(4)(A)(I). For purposes of determining whether medical improvement has occurred, the SSA compares a beneficiary's current condition with his condition as of the date of the most recent favorable medical decision. 20 C.F.R. §404.1594(b)(7)(2015).

Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Kirk v. Secretary, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). This court does not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. See Brainard v. Secretary, 889 F.2d 679, 681 (6th Cir. 1989); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. Kirk, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion, Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc); Casey v. Secretary, 987 F.2d 1230 (6th Cir. 1993).

4

### C.     ALJ's Findings

The Administrative Law Judge found that Plaintiff was impaired as result of mental retardation, but that this condition had medically improved since August 1, 2002, so that he could now perform simple, routine work at all exertional levels.  The ALJ determined that claimant could not handle production demands, nor could he be dependent on other workers. Assigned tasks would have an element of continuity, so that there were no sudden or abrupt changes in the work environment.  There would  be minimal contact with supervisors, co-workers or the general public.  Claimant's history of marijuana use was not considered a contributing factor in the determination of disability. Consequently, the ALJ terminated claimant's SSI benefits as of August 2002 (TR 298-310).

### D.     Discussion and Analysis

After review of the record, I suggest that there is substantial evidence on the record supporting the Commissioner's conclusion that Plaintiff regained the ability to perform a significant number of jobs after August 2002, which would accommodate his limited ability to carry out complex tasks in a public forum. Contrary to Plaintiff's contention, the medical evidence of record supports the finding that Plaintiff's retardation had improved since the date of the original disability decision, and that he now possessed sufficient mental capacity to perform a significant number of jobs existing in the national economy after August 2002.

As mentioned, the claimant was found to be disabled in February 1994, due to mental retardation that was severe enough to meet section 112.05 of the Listing of Impairments (TR 296). In reviewing Plaintiff's continued eligibility for disability benefits, ALJ Wilenkin

5

determined that Plaintiff no longer met or equaled Listing 112.05 after August 2002. The ALJ based this decision on his review of the results of psychological testing conducted in June 2002, when claimant was 24 years old. These tests revealed that Plaintiff had a valid performance IQ score of 77, and a valid verbal and full scale IQ score of 73. These scores took claimant out of the range of mental retardation and put him into the range of borderline cognitive functioning. Given that these scores were all above 70, Judge Wilenkin found that Plaintiff no longer met any of the criteria for Listing 12.05, which is the adult equivalent of Listing 112.05 for children (TR 300). Plaintiff does not contest the ALJ's finding that he no longer meets the criteria of Listing 12.05[2].

The medical record supports the ALJ's determination that Plaintiff experienced medical improvement related to his mental capacity. Claimant's disability benefits ceased following a psychological consultative examination with Dr. Hugh Bray, Ph.D., in June 2002. Following a battery of tests, the psychologist concluded that Plaintiff had regained the ability to engage in age appropriate activities and behaviors, including work (TR 303).

Significantly, there was virtually no evidence of mental health treatment for five years after claimant's benefits were terminated in 2002. Dr. B. Sandaire, a staff psychiatrist at the

---

[2]While Plaintiff broadly asserts that ALJ Wilenkin's listing analysis is unsupported by substantial evidence, he failed to support this argument with corroborating medical evidence. Instead, claimant asserts that this Court had affirmed a previous ALJ's determination that his retardation met the listing (See Plaintiff's Brief in Support of Summary Judgment at p. 12). Had this Court actually rendered a final decision on the merits regarding whether Plaintiff's impairments, marijuana abuse included, met a listing, the "law of the case" doctrine would have prevented ALJ Wilenkin from revisiting that issue the second time around. Hollins v. Massanari, 49 F. App'x 533, 535 (6th Cir. 2002); see also Consolidation Coal Co. v. McMahon, 77 F.3d 898, 905 n. 5 (6th Cir. 1996). ("Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case"). Since this Court never "decided" the validity of the previous ALJ's initial listing determination, the law of the case doctrine does not apply.

Community Mental Health Clinic of East Detroit, conducted a consultative examination September 2007, and reported afterwards that claimant admitted he was currently asymptomatic and had no thought disorder complaints. Plaintiff also acknowledged that his medications were beneficial, and they were not causing any major side effects (TR 237). Dr. Sandaire's mental status examination found that Plaintiff made good eye contact, had an intact judgment, and exhibited a coherent thought process (TR 238).

A residual functional capacity evaluation by Dr. Terrance Mills, Ph.D., on July 10, 2008, noted that claimant displayed fair expressive language skills. His responses were spontaneous, clear, on target, and showed no circumstantial or tangential tendencies. Plaintiff denied experiencing any hallucinations, delusions or suicidal behavior. Claimant told the psychologist that he was looking for a job, but remained dependent on others for assistance with some of his daily living needs. He expressed fair insight into his condition (TR 242).

In a Medical Source Statement of Ability to do Work-Related Activities (Mental), Dr. Mills indicated that claimant had moderate limitations in understanding, remembering and carrying out complex instructions. The psychologist believed that Plaintiff had just mild limitations interacting appropriately with supervisors and co-workers. Claimant had no limitations with regard to understanding, remembering and carrying out simple instructions, or making simple, work related decisions (TR 245-246).

The most recent consultative examination and intellectual testing took place in April 2012, by Dr. Nick Boneff, Ph.D., who reported that Plaintiff was not taking any medications

7

or receiving mental health treatment.  Dr. Boneff indicated that he was unable to determine a full-scale IQ score due claimant's apparent lack of effort upon testing.  Nevertheless, Dr. Boneff opined that Plaintiff did not exhibit any behavioral problems.  The psychologist did not believe that claimant's mental capacity would affect his ability to interact appropriately with co-workers, supervisors, or the general public (TR 373-374).

When Plaintiff was asked why he was unable to work, ALJ Wilenkin noted that the claimant failed to provide a response with any connection to his dysthymic disorder. Claimant stated that he felt depressed due to his socio-economic situation, inability to find a job, and decreased visitation with his kids.  According to Judge Wilenkin, Plaintiff did not express any inability to function secondary to his mental status (TR 307).  Claimant readily admitted that he does what he can to keep himself busy and occupied, such as performing chores for his mother and other family members (TR 268).  He enjoyed taking walks, watching television and reading books and magazines (TR 270, 307).

Given the objective clinical findings showing medical improvement after the time Plaintiff was initially granted disability benefits, the Law Judge reasonably determined that the claimant was no longer entitled to disability benefits.  There is also minimal evidence of claimant's marijuana use after August 2002, and the record provides no indication that it rose to the level of "addiction" as required by section 12.09 of the Listing of Impairments. Moreover, there was no evidence that it caused or contributed to claimant's dysthymic disorder (TR 301).  In light of that evidence, the Commissioner could reasonably conclude

that Plaintiff's mental capacity or continued substance abuse after August 2002, rendered him disabled and unable to work.

It is the rare case, indeed, the exception, in which every piece of evidence points incontrovertibly towards a decision to deny benefits. There was evidence in the record which, taken in isolation, might suggest that the Plaintiff remained totally disabled. However, special deference is owed to the credibility finding of the ALJ, who was the only one who had the opportunity to observe the demeanor of the witness, evaluate what was said in light of how it was said, and to consider how that testimony fit in with the rest of the medical evidence. Such observation is invaluable and should not be discarded lightly. Beavers v. Secretary, 577 F.2d 383 (6th Cir. 1978). See also Williamson v. Secretary, 796 F.2d 146, 150 (6th Cir. 1986).

By establishing that he could not return to his past relevant work, the Plaintiff effectively shifted to the Commissioner the burden of proving that he had the vocational qualifications to perform alternative jobs existing in the economy, notwithstanding his impairment. The Commissioner met his burden of proving the existence of jobs which accommodated claimant's known restrictions. In response to a hypothetical question that took into consideration claimant's educational and vocational background, along with his most significant impairments, the Vocational Expert testified that there were numerous office, bus and airplane cleaner jobs existing in the national economy after August 2002, that he could perform with minimal vocational adjustment. These simple, routine jobs did not require much concentration, and could be performed during the night after a building had been vacated.

9

As a result, the duties would not involve working an entire shift with other members of the cleaning crew, and contact with the general public would not be possible (TR 402-406). Given the objective clinical findings of the examining mental health professionals since August 2002, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff regained the capacity to make a successful adjustment to work that existed in significant numbers in the national economy.

In sum, the Commissioner's decision to deny benefits was within the range of discretion allowed by law and there is simply insufficient evidence on this record to find otherwise. Accordingly, Plaintiff's Motion for Summary Judgment should be denied, that of Defendant granted and the instant Complaint dismissed.

## III.   <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal.  <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981), <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>Howard v. Secretary of HHS</u>, 932 F.2d 505 (6th Cir. 1991).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987), <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991).  Pursuant to Rule 72.1 (d)(2) of the

<u>Local Rules of the United States District Court for the Eastern District of Michigan</u>, a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limits are extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                    s/ Charles E. Binder
                                    CHARLES E. BINDER
Dated: August 14, 2015              United States Magistrate Judge

11